IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF CONNECTICUT

NATIONAL CASUALTY COMPANY,

    Plaintiff,

v.                                        Case No. 3:25-cv-1963

XPT PARTNERS, LLC,

    Defendant.

## COMPLAINT FOR INSURANCE POLICY RESCISSION

For its Complaint against Defendant XPT Partners, LLC ("XPT Partners" or "Defendant"), Plaintiff National Casualty Company ("NCC") states the following.

### PARTIES

1. NCC is an insurance company duly organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

2. XPT Partners is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Connecticut. XPT Partners' sole member is XPT Group LLC, which is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Connecticut. The members of XPT Group, LLC are citizens of the States of Connecticut, Texas, and/or Delaware.

### JURISDICTION AND VENUE

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). There is complete diversity of citizenship between NCC and the Defendant, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b)(1). XPT Partners' principal place of business is in this District and Division.

## FACTUAL ALLEGATIONS

### The Prior Department of Insurance Investigation

6. During 2022, the Arizona Department of Insurance and Financial Institutions (the "Department") commenced an investigation after receiving two consumer complaints alleging various acts of misconduct by Mohave Transportation Insurance Company ("Mohave") in connection with the adjustment of the consumers' automobile insurance claims (the "Prior Department of Insurance Investigation").

7. On or about October 19, 2023, the Department issued a Consent Order directing Mohave to pay a civil monetary penalty for failing to respond to the Department's requests for documents and information in connection with its investigation. A copy of the October 19, 2023 Consent Order is attached hereto as "Exhibit 1."

8. During the course of the Department's investigation, the Department learned that EMA Risk Services, LLC ("EMA") acted as the third-party administrator authorized to handle claims on behalf of Mohave.

9. On or about May 1, 2024, the Department issued a Consent Order finding that EMA engaged in the business of an insurance adjuster in Arizona without a license in violation of Section 20-295(A)(2) of the Arizona Revised Statutes. A copy of the May 1, 2024 Consent Order is attached hereto as "Exhibit 2."

### The 2024 Application and 24-25 Policy

10. On or about June 28, 2024, Dana Bjornson, XPT Partners' Chief Financial Officer, executed a Renewal Application for Insurance Agents and Brokers Professional Liability Policy

2

(the "2024 Application"), which was submitted to NCC.

11.     Question 12.a. in the 2024 Application inquired as follows:

12.a. During the past twelve (12) months has the Applicant or any owner, director, officer, employee, partner or independent contractor of the Applicant been the subject of a disciplinary action, investigation or complaint?

☐ Yes   ☒ No

If "Yes," please attach full details.

12.     Question 12.b. in the 2024 Application inquired as follows:

12.b. Is any Insured aware of any claim or potential claim that has not been reported to the Applicant's insurer?

☐ Yes   ☒ No

If "Yes," please attach full details.

13.     XPT Partners did not disclose the Prior Department of Insurance Investigation or May 1, 2024 Consent Order to NCC in the 2024 Application.

14.     The 2024 Application stated that "[t]he person signing this **Application** declares that to the best of his or her knowledge the statements set forth herein and the information in the materials submitted herewith are true and correct and that reasonable efforts have been made to obtain sufficient information from all proposed **Insureds** to facilitate the proper and accurate completion of this **Application** for the proposed policy. . . . [T]his **Application** shall be the basis of the contract should a policy be issued. It is agreed by all concerned that the particulars and statements contained in this **Application** are true and shall be deemed material to the decision of the **Company** to issue the insurance." (emphasis in original).

15.     Based upon the representations and warranties contained in the 2024 Application, NCC issued Insurance Agents and Brokers Professional Liability Policy No. ABO-0001110 to XPT Partners (the "24-25 Policy") effective for the period from July 13, 2024 to July 13, 2025.

**The Prior Potential Bad Faith Claim**

16. Indemnity Insurance Company of North America, ACE American Insurance Company, and their affiliates (collectively, "Chubb") entered into a Master Self-Administered Claims Services Agreement (the "MSA") with Mohave pursuant to which Mohave agreed to provide claims adjusting services on behalf of Chubb with respect to insurance claims made under certain Chubb insurance policies.

17. Mohave entered into a Third-Party Claims Administration Agreement (the "TPA Agreement") with EMA pursuant to which EMA agreed to perform the claims adjusting services that Mohave had agreed to perform on behalf of Chubb.

18. On or about July 19, 2023, Beth and Matthew Mayhew filed a lawsuit against Nova First, LLC, Vladimir Sadovyh, Globex Transport, Inc., D & M Carriers, LLC, Capstone Logistics, LLC, Reser's Fine Foods, Inc., Kendall's Towing & Recovery LLC, and James Murphy, Case No. 23CW-CV00668, in the Circuit Court of Callaway County, Missouri (the "Mayhew Lawsuit").

19. In the Mayhew Lawsuit, the plaintiffs alleged that Beth Mayhew was injured in a car accident as a result of the negligent conduct of the defendants.

20. Certain defendants in the Mayhew Lawsuit submitted the Mayhew Lawsuit to Chubb for coverage under one or more insurance policies issued by Chubb to one or more of the defendants (the "Mayhew Claim").

21. EMA adjusted the Mayhew Claim on behalf of Mohave and Chubb.

22. In or around August 2024, EMA was apprised that the plaintiffs in the Mayhew Lawsuit were alleging that EMA's handling of the Mayhew Claim was conducted in bad faith (the "Prior Potential Bad Faith Claim").

## The 2025 Application

23. On or about June 24, 2025, Dana Bjornson executed a Renewal Application for Insurance Agents and Brokers Professional Liability Policy (the "2025 Application"), which was submitted to NCC.

24. Question 12.b. in the 2025 Application inquired as follows:

12.b. Is any Insured aware of any claim or potential claim that has not been reported to the Applicant's insurer?

☐ Yes   ☒ No

If "Yes," please attach full details.

25. XPT Partners did not disclose the Prior Potential Bad Faith Claim to NCC in the 2025 Application.

26. The 2025 Application stated that "[t]he person signing this **Application** declares that to the best of his or her knowledge the statements set forth herein and the information in the materials submitted herewith are true and correct and that reasonable efforts have been made to obtain sufficient information from all proposed **Insureds** to facilitate the proper and accurate completion of this **Application** for the proposed policy. . . . [T]his **Application** shall be the basis of the contract should a policy be issued. It is agreed by all concerned that the particulars and statements contained in this **Application** are true and shall be deemed material to the decision of the **Company** to issue the insurance." (emphasis in original).

## The 25-26 Policy

27. Based upon the representations and warranties contained in the 2024 and 2025 Application, NCC issued Insurance Agents and Brokers Professional Liability Policy No. ABO-0001168 to XPT Partners (the "25-26 Policy") effective for the period from July 13, 2025 to July

5

13, 2026 (the "25-26 Policy Period").  A copy of the 25-26 Policy is attached hereto as "Exhibit 3."

28. Subject to the 25-26 Policy's terms, conditions, limitations, exclusions, and endorsements, the 25-26 Policy states that the "Company" (i.e., NCC) will pay on behalf of the "Insureds" any "Damages" as a result of a "Claim" first made against the "Insureds" during the 25-26 Policy Period or "Discovery Period," if applicable, for a "Wrongful Act" of the "Insured" or any other person for whom the "Insured" is legally liable, but only if (1) such "Wrongful Act" is first committed on or after the "Retroactive Date" stated in Item 5 of the Declarations and before the end of the 25-26 Policy Period; and (2) prior to the inception date of the first policy in a series of uninterrupted policies issued to the "Named Insured" by NCC of which the 25-26 Policy is a direct or indirect renewal or replacement, no "Insured" had a reasonable basis to believe that such "Wrongful Act" had been committed or that a "Claim" would be made against any "Insured" alleging such "Wrongful Act." (Ex. 3 § I(A).)

29. Both XPT Partners and EMA are "Named Insureds" under the 25-26 Policy. (Ex. 3 at Declarations, Item 1, as amended by Endorsement No. 7.)

30. Section XIII of the 25-26 Policy provides that, "[b]y accepting this Policy the **Insureds** agree that the statements in the **Application** are their agreements and representations and that this Policy is issued in reliance upon the truth of such agreements and representations, which are deemed material to the acceptance of the risk or the hazard assumed by the **Company** under the Policy." (Ex. 3 § XIII) (emphasis in original).

31. The 25-26 Policy defines "Application" as "each and every signed application, any attachments to such applications, other materials submitted therewith or incorporated therein and any other documents submitted in connection with the underwriting of this Policy or the

6

underwriting of any other insurance agents professional liability policy issued by the **Company**, or any of its affiliates, of which this Policy is a renewal, replacement or successor in time." (Ex. 3 § II(A)) (emphasis in original).

### The Claim and NCC's Coverage Position

32. On or about September 9, 2025, Mohave and EMA were provided with notice "of a potential claim against Mohave arising out of bad faith allegations asserted by the insured, Globex Transport, Inc. ('Globex') and plaintiff Mayhew against Chubb, Mohave and EMA (the "Claim").

33. On or about October 23, 2025, NCC sent a letter acknowledging receipt of the Claim.

34. NCC is providing coverage to EMA with respect to the Claim subject to a reservation of its rights under the 25-26 Policy and at law, including its express reservation of its right to rescind the 25-26 Policy.

### COUNT I – RECISSION

35. NCC hereby adopts by reference the allegations contained in paragraphs 1 through 34 of this Complaint as if fully set forth herein.

36. Defendant knowingly made misrepresentations and omissions to NCC, including but not limited to: (i) falsely stating in the 2024 Application that, in the twelve months prior to the execution of the 2024 Application, EMA had not been the subject of a disciplinary action, investigation or complaint; and (ii) falsely stating in the 2024 and 2025 Applications (together, the "Applications") that no Insured was aware of any claim or potential claim.

37. Defendant's misrepresentations and omissions were material to NCC's acceptance of the risk and/or the hazard assumed by NCC.

38. NCC, acting in good faith, would not have issued the 25-26 Policy, would have issued the 25-26 Policy under materially different terms, and/or would not have provided coverage with respect to the hazard resulting in the loss, had the true facts been disclosed as required by the Applications or otherwise.

39. NCC seeks a judicial determination rescinding the 25-26 Policy as a result of Defendant's concealment and/or failure to disclose material facts and circumstances. NCC will return the premium collected from Defendant upon the judicial determination of rescission.

**PRAYER FOR RELIEF**

WHEREFORE, NCC prays that the Court enter an Order:

1. declaring that the 25-26 Policy is rescinded and void;

2. awarding NCC its costs, expenses, and attorneys' fees to the greatest extent allowed by law; and

4. awarding NCC all other relief the Court deems just and equitable.

Dated:  November 24, 2025

*/s/ Jody N. Cappell (ct26982)*
Jody N. Cappello (ct26982)
Kaufman Dolowich
195 Church Street, 4th Floor
New Haven, CT 06510
203-293-0551
jody.cappello@kaufmandolowich.com

Attorneys for Plaintiff National Casualty Company